**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**DOUGLAS KOCH,**

              **Plaintiff,**                                    **Case No. 2:08-cv-1127**
                                                          **JUDGE GREGORY L. FROST**
       **v.**                                             **Magistrate Judge Mark R. Abel**

**COUNTY OF FRANKLIN, OHIO, et al.,**

              **Defendants.**

<u>**OPINION AND ORDER**</u>

       This matter is before the Court on the Motion for Summary Judgment of the County

Defendants ("Defendants' Motion for Summary Judgment") (Doc. # 28), Plaintiff's

Memorandum Contra Defendants' Motion for Summary Judgment ("Plaintiff's Memorandum in

Opposition to Defendants' Motion for Summary Judgment") (Doc. # 67), Reply of the County

Defendants to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary

Judgment ("Defendants' Reply in Support of their Motion for Summary Judgment") (Doc. # 69),

Plaintiff's Motion for Leave to File a Reply to the Reply of the County Defendants to Plaintiff's

Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Motion

to File a Surreply") (Doc. # 70), the Memorandum of the County Defendants in Opposition to

Plaintiff's Motion to File a Surreply (Doc. # 71), and Plaintiff's Reply to the Memorandum of

the County Defendants in Opposition to Plaintiff's Motion to File a Surreply (Doc. # 72).   For

the reasons that follow, the Court **DENIES** Plaintiff's Motion to File a Surreply and **GRANTS**

Defendants' Motion for Summary Judgment.

1

## I.  Background

On November 26, 2008, Defendants removed this action to this Court from the Court of Common Pleas, Franklin County, Ohio.  Plaintiff Douglas Koch filed this action seeking compensatory and punitive damages for physical and emotional injuries allegedly sustained by him while he was incarcerated at the Franklin County Corrections Center II ("Jackson Pike Jail").  Plaintiff was incarcerated at the Jackson Pike Jail as a pretrial detainee from July 30, 2006 through January 24, 2007, with a brief interruption from January 12 to January 15, when he was in the custody of the Delaware County Sheriff.  Plaintiff named as defendants in this action Franklin County, Ohio, the Franklin County Board of Commissioners, Franklin County Sheriff Jim Karnes, Franklin County Lieutenant Douglas Edgington, Franklin County Sergeant Jeremey Bobaury, Franklin County Corporal Mark Montrose, and Franklin County Deputies Culbertson, Clayton Kern, Burton Haren, and Jeffrey Valentine.  ("Defendants")

Plaintiff asserts a number of claims against Defendants in their official capacities and their individual capacities under 42 U.S.C. § 1983 ("Section 1983") for alleged violations of his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution during his incarceration at the Jackson Pike Jail.  His claims include allegations of unsanitary conditions, inadequate cleaning and hygienic supplies, overcrowding, lack of exercise and recreation time, excessive force, denial of medical care, and retaliatory conduct.  Plaintiff also asserts the state law claims of intentional infliction of emotional distress and assault and battery.

The Court will first address Plaintiff's Motion to File a Surreply and then it will consider Defendants' Motion for Summary Judgment.

## II.  Plaintiff's Motion to File a Surreply

### A.  Standard

The Local Civil Rules of this Court permit the filing of a motion and memorandum in support, a memorandum in opposition, and a reply memorandum.  S. D. Ohio Civ. R. 7.2(a)(1). The rule specifically states that "[n]o additional memoranda beyond those enumerated will be permitted except upon leave of court for good cause shown."  S. D. Ohio Civ. R. 7.2(a)(2).

### B.  Discussion

On April 1, 2010, Defendants filed Defendants' Reply in Support of their Motion for Summary Judgment.  (Doc. # 69.)  On April 15, 2010, Plaintiff filed Plaintiff's Motion to File a Surreply, attaching as an exhibit the proposed surreply.  (Doc. # 70.)  In Plaintiff's Motion to File a Surreply, Plaintiff argues that he should be permitted to file a surreply because Defendants were given an extension of time in which to file Defendants' Motion for Summary Judgment and because Defendants untimely filed Defendants' Reply in Support of their Motion for Summary Judgment.  Plaintiff indicates that his surreply is limited to "two issues raised in the reply of the Defendants."  (Doc. # 70 at 1.)

The first issue Plaintiff addresses is Defendants' argument that the deposition exhibits filed by Plaintiff in support of Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment are "unreliable hearsay."  *Id.*  These deposition exhibits consist of Plaintiff's handwritten logs of events that allegedly occurred while he was incarcerated at the Jackson Pike Jail.  Defendants point out that these documents are unreliable hearsay and should be stricken:

> The chronology of events that plaintiff provided in discovery was a recompilation of "several different legal pads that I kept different records on."  Plaintiff depo. P. 55.  Plaintiff stated after a lengthy discussion regarding his record keeping, that he could not recall when he started writing down his information, was "not sure"

3

if he edited or added anything, and acknowledged that the entries were not written contemporaneously with the events described.  Plaintiff depo. p. 52-59.  Plaintiff was asked to provide the source documents used to compile his chronology in his deposition and through interrogatories.  Plaintiff depo. p. 60.  None were provided by plaintiff to defendants, and none were attempted to be introduced by plaintiff in order to establish the trustworthiness of plaintiff's chronology.  The deposition exhibits are part and parcel of the unreliable and untrustworthy chronology made by plaintiff.

Rule 803(5) of the Federal Rules of Evidence provides an exception to the hearsay rule.  The documents submitted by plaintiff do not satisfy this rule.  Plaintiff did not submit his source documents and attest to their veracity and timeliness.  Plaintiff instead developed an unreliable chronology from these documents which he admits he may have edited.  Additionally, plaintiff did not submit an affidavit regarding independent recollection of the events alleged.  The chronology is not only unreliable and untrustworthy, it is hearsay upon hearsay and must be stricken as inadmissible.

(Doc. # 69 at 2-3.)  Plaintiff requests permission to address this argument, claiming that he is

merely "clear[ing] up any procedural issues related to" the deposition exhibits.  Plaintiff attaches

as an exhibit to his proposed surreply, an affidavit in which he purports to attest to the veracity

of the handwritten logs.

The second issue Plaintiff would like to address are his medical records, which he

attaches to the proposed surreply (and attaches additional records to his reply in support of

Plaintiff's Motion to File a Surreply).  These medical records purportedly support his claim that

he contracted scabies, Methicillin-Resistant Staphylococcus Aureus ("MRSA"), and a fungal

infection while he was incarcerated at the Jackson Pike Jail.  Plaintiff contends that these records

are filed in response to Defendants' Reply in Support of Defendants' Motion for Summary

Judgment because in that reply Defendants have "taken the position that Plaintiff has failed to

provide medical documentation of his alleged injuries[.]"  *Id.* at 2.

Defendants filed a memorandum in opposition to Plaintiff's Motion to File a Surreply,

arguing that Plaintiff failed to offer good cause for permission to file a surreply.  First, Defendants contend that Defendants' Reply in Support of their Motion for Summary Judgment was not untimely.  Second, Defendants argue that the logs and the medical records do not present "procedural issues" as Plaintiff suggests nor do they address issues that Defendants raised for the first time in Defendants' Reply in Support of Defendants' Motion for Summary Judgment. Defendants' arguments are well taken.

### 1.  Defendants' alleged late filings do not provide Plaintiff good cause to file a surreply.

Plaintiff contends that he should be permitted to file a surreply because Defendants filed Defendants' Reply in Support of their Motion for Summary Judgment late and because this Court granted Defendants' motion to extend the dispositive motion deadline.  Defendants argue that they did not untimely file Defendants' Reply in Support of their Motion for Summary Judgment and that Plaintiff's arguments do not provide good cause to permit a surreply.  This Court agrees.

Under the Local Rules of this Court, a party is permitted fourteen days after the date of service of the memorandum in opposition to file a reply memorandum.  S. D. Ohio Civ. R. 7.2(a)(2).  Further, under the Electronic Filing Policies and Procedures Manual II of the United States District Court for the Southern District of Ohio, as amended January 15, 2010, a party served electronically is entitled to the same three day extension of time to respond as if they had been served by mail.  Thus, a party has seventeen days to file a reply memorandum.  Here, Plaintiff filed Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment on March 15, 2010.  Defendants were required to file a reply memorandum by April 1, 2010, which they did.  (*See* Doc. # 69.)  Further, the fact that this Court granted Defendants'

5

request for an extension of time to file their motion for summary judgment does not provide good cause for Plaintiff to file a surreply.

**2. The issues presented by Plaintiff are not in response to matters presented for the first time by Defendants in Defendants' Reply Memorandum.**

In his reply in support of Plaintiff's Motion to File a Surreply, Plaintiff contends that he should be permitted to file a surreply because "a district court responding to a request for leave to file a sur-reply 'routinely grants such motions when a party is unable to contest matters presented to the court for the first time in the last scheduled pleading.' *Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 536 (D.C. Cir.2003) (quoting *Lewis v. Rumsfeld*, 154 F. Supp.2d 56, 61 (D. D.C.2001))."  While the Court agrees with this legal proposition, the circumstances here do not permit the application of it.

That is, the two issues here, *i.e.*, Plaintiff's handwritten logs and Plaintiff's medical records, were not for the first time presented in Defendants' Reply in Support of their Motion for Summary Judgment.  The handwritten logs were attached by Plaintiff to Plaintiff's Memorandum in Opposition.  Simply because Defendants in their reply memorandum point out that the handwritten logs are not acceptable summary judgment evidence under Federal Rule of Civil Procedure 56 and this Court's Local Rules does not constitute a new matter presented for the first time.  Indeed, as discussed below in Section II.B.4, the trustworthiness of these handwritten logs was at issue long before Defendants filed their dispositive motion.

As to the medical records, Defendants unambiguously state that there is no evidence that Plaintiff contracted scabies, MRSA, or fungal infection while incarcerated at Jackson Pike Jail in Defendants' Motion for Summary Judgment–*not* for the first time in Defendants' Reply in Support of their Motion for Summary Judgment.  (Doc. # 28 at 20: "Inmate Douglas Koch was

6

never identified as having MRSA, scabies or lice by the medical department. . . . There is simply no evidence that the environment of [Jackson Pike Jail] was such that it induced the spread of disease, or that Koch contracted any of the maladies he complains of at [the Jackson Pike Jail].".)

Accordingly, the Court easily concludes that the veracity of the handwritten logs and the existence of the medical records were not raised for the first time in Defendants' Reply in Support of their Motion for Summary Judgment.

### 3. Plaintiff's proposed submissions are not procedural in nature and Plaintiff is not permitted to file these supplements under the Federal Rules and our Local Rules.

Plaintiff labels as "procedural" the admission of the affidavit attesting to the veracity of the handwritten logs and the medical records, apparently assuming that procedural errors provide good cause to file a surreply. This Court, however, disagrees with Plaintiff's assessment. The failure to submit admissible evidence in support of a memorandum in opposition to a properly supported motion for summary judgment is simply not procedural in nature, but rather goes to the heart of the substance of Plaintiff's rebuttal. As Defendants correctly argue, "Plaintiff bears the burden under [Federal] Civil Rule 56 of responding with affidavits or otherwise provided by rule [and] Plaintiff should not be allowed a second chance to supplement the record when he was fully able to provide admissible evidence at the time of filing his response." (Doc. # 71 at 2); *see also* Fed. R. Civ. P. 56(e)(2) ( "Opposing Party's Obligation to Respond. When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."). Plaintiff does not claim that the evidence he now seeks to admit was unavailable to be

7

timely filed.

Further, this Court's Local Rules provide instructions on the type of evidence that is acceptable at the dispositive motion juncture and how and when that evidence is to be presented to the Court:

> Evidence ordinarily shall be presented, in support of or in opposition to any Motion, using affidavits, declarations pursuant to 28 U.S.C. § 1746, deposition excerpts, admissions, verified interrogatory answers, and other documentary exhibits.  Unless already of record, such evidence shall be attached to the memorandum or included in an appendix thereto, and shall be submitted within the time limit set forth [in Rule 7.2(d)].

S. D. Ohio Civ. R. 7.2(e).  That time limits is defined as:

> When proof of facts not already of record is necessary to support or oppose a motion, all evidence then available shall be discussed in, and submitted no later than, the primary memorandum of the party relying upon such evidence.

S. D. Ohio Civ. R. 7.2(d).

As the Court determined *supra*, Plaintiff offers no good reason for the Court to accept his untimely filed affidavit and medical records.  Consequently, the Court **DENIES** Plaintiff's Motion to File a Surreply.  *See Loggins v. Franklin County*, 218 Fed. Appx. 466, 478 (6th Cir. 2007) (affirming this Court's refusal to consider documents filed beyond the filing deadline set out in the Local Rules and affirming this Court's grant of summary judgment in favor of the defendants).

## 4. Alternative reasons this Court cannot accept the evidence attached to Plaintiff's proposed surreply.

The Court notes that even if Plaintiff had timely filed the affidavit and the medical records, there are alternative reasons why this evidence cannot be relied upon by this Court. With regard to the medical records, on September 9, 2009, Plaintiff was asked in his deposition

8

for all medical documentation related to his claims.  (Doc. # 71and affidavit attached thereto.)

Plaintiff provided none.  *See id.*  Plaintiff was asked for these documents and information related

to these documents in requests for production of documents and interrogatories due December

30, 2009, but failed to respond to that request.  *See id.*  Plaintiff did not respond to Defendants'

discovery requests until February 2, 2010.  *See id.*  At that time, however, Plaintiff provided no

documents.  *See id.*

On February 4, 2010, Magistrate Judge Abel held a discovery conference regarding the

outstanding medical documentation discovery.  In his Discovery Conference Order the

Magistrate Judge stated:

> Defense counsel asserts that plaintiff has not provided a list of his medical
> providers or records from them.  Plaintiff's counsel, who is co-counsel, not the
> trial attorney and had only an hour or so notice of the telephone conference, said
> he was unprepared to address this issue.  He did say that plaintiff is willing to
> provide any medical records he may have.  He is also willing to give a release.
> Plaintiff's attorney will get back to defendants' attorney by the close of business
> February 5 to let her know the status of the medical provider discovery.

(Doc. # 25.)  Plaintiff, however, failed contact Defendants' counsel as ordered by Magistrate

Judge Abel.  (Doc. # 71 at 4 and attached affidavit.)  Plaintiff never received the medical records

until some were attached to Plaintiff's Motion to File a Surreply and, even more surprisingly,

some additional records were attached to Plaintiff's reply in support of his motion to file a

surreply.  Plaintiff is not permitted to rely upon evidence that was requested and not provided

during discovery.  *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or

identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that

information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the

failure was substantially justified or is harmless.").  Based on the facts before the Court, there is

no reason to believe that Plaintiff's failure to provide the medical records was substantially justified or harmless.

With regard to Plaintiff's affidavit, in it Plaintiff avers that the handwritten logs attached to Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment are what the memorandum says they are, *i.e.*, a log of incidents that Plaintiff claims occurred while he was incarcerated at the Jackson Pike Jail. Plaintiff admits that the logs were not contemporaneously made; however, he avers that they were compiled from contemporaneously made notes that he mailed to his father from the jail. Defendants argue that throughout the litigation they requested evidence as to the veracity of these handwritten logs, requesting the source documents in written discovery and questioning Plaintiff regarding them during his deposition. Indeed, these source documents were also addressed by Magistrate Judge Abel at the February 4, 2010 discovery conference, and in the Discovery Conference Order:

> [Plaintiff] also testified about a log he kept regarding actionable events at the Jail. He said that it was not kept contemporaneously but compiled from source documents. Following the deposition, defendants' counsel served interrogatories and requests for production of documents seeking the names of his medical providers, any records from them, and the source documents for the log. On February 1, plaintiff served responses to the supplemental interrogatories.

> During the conference, plaintiff's counsel said that the source documents for the logs were letters Koch mailed to his Dad. Those had been copied and provided to defense counsel with the initial disclosures. (The "log" may just be copies of those letters.) Plaintiff's counsel will double-check with his client to make sure he has, as counsel believes, in fact turned over all such documents.

(Doc. # 25 at 1.) Apparently, Plaintiff determined that there were source documents that had not been produced and set up a third party vendor to make copies for Defendants. However, while it is not exactly clear, it appears that these copies may have been made available a few days before the extended dispositive motion deadline. If, however, they were provided, they were provided

10

at such a late date that Defendants were unable to depose Plaintiff regarding them. Therefore, Plaintiff has provided no proof that the handwritten logs were made from contemporaneous notes except his own untimely filed self serving affidavit testimony.

The Court concludes that it would be unfairly prejudicial to Defendants for the Court to allow this type of late admission of affidavit testimony or previously undisclosed medical records about which Defendants were not even able to depose Plaintiff, despite their obvious diligent efforts to obtain the discovery.

Finally, with regard to the handwritten logs, they are not properly before the Court because they are unauthenticated. The parties refer to these documents as "deposition exhibits." However, Plaintiff's deposition, to which these handwritten logs were apparently made exhibits, is not properly before this Court. On March 16, 2010, Plaintiff filed his deposition transcript. (Doc. # 68). This deposition, as well as the other depositions filed by Plaintiff on that date, lack an accompanying signed court reporter certification, which is an "essential portion[] of [the] transcript[]." S. D. Ohio Civ. R. 7.2(e). The error means that the transcripts filed with this Court fail to qualify as proper summary judgment evidence under Rule 56 of the Federal Rules of Civil Procedure. *See Weimer v. Honda of Am. Mfg.*, 13 Wage & Hour Cas. 2d (BNA) 1749 (S.D. Ohio June 12, 2008) (citing Fed. R. Civ. P. 30(f)(1); *Soliday v. Miami County, Ohio*, No. C-3-91-153, 1993 U.S. Dist. LEXIS 21311, 1993 WL 1377511, at *5 n.4 (S.D. Ohio Nov. 22, 1993) (stating that "the Court cannot consider" deposition testimony referenced in summary judgment reply memorandum but not filed with court); *Moore v. Florida Bank of Commerce*, 654 F. Supp. 38, 41 n.2 (S.D. Ohio 1986) (unauthenticated deposition not filed with court is not proper material under Rule 56); *Podlesnick v. Airborne Express, Inc.*, 550 F. Supp. 906, 910 (S.D. Ohio 1982)

(depositions not filed with court but referred to in summary judgment memoranda were not considered in court's decision)).  "The Court therefore cannot consider the uncertified deposition transcripts."  *Id.* (citing *Harris v. City of St. Clairsville, Ohio*, No. 07-3124, 2008 U.S. App. LEXIS 8869, 2008 WL 1781236, at *3 (6th Cir. Apr. 17, 2008) (affirming refusal to consider uncertified depositions in summary judgment analysis)).

### 5.  Conclusion regarding Plaintiff's Motion to File a Surreply

For all of the reasons stated above, the Court concludes that Plaintiff has failed to offer good cause to file a surreply.  Therefore, the Court **DENIES** Plaintiff's Motion to File a Surreply.  (Doc. # 69.)

### III.  Defendants' Motion for Summary Judgment

## A.  Standards

### 1.  Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.  *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact."  *Celotex Corp.*, 477

12

U.S. at 323.  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  The Court must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of that party. *See id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie Power Prods., Inc.*, 328 F.3d at 873 (quoting *Anderson*, 477 U.S. at 248). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### 2.  42 U.S.C. § 1983

To state a claim under Section 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988);  *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).   Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### B.  Plaintiff's Administrative Remedies

Defendants request summary judgment on all of the claims filed against them based on

13

Plaintiff's failure to exhaust his administrative remedies as required under the Prison Litigation

Reform Act, 42 U.S.C. § 1997e *et seq.* ("PLRA").  Plaintiff, in his opposition memorandum,

argues, *inter alia*, that he is not subject to the PLRA.  This Court agrees.

Plaintiff argues that he is not subject to the PLRA because he was not incarcerated at the

time he filed the complaint in this action, citing *Foulk v. Charrier*, 262 F.3d 687, 697 (8th

Cir.2001).  While *Foulk* does not stand for that proposition, Plaintiff is correct that the PLRA

does not apply to him.  The PLRA provides that "[n]o action shall be brought with respect to

prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any

jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted."  42 U.S.C. § 1997e(a).  Further, the PLRA defines "prisoner" as "any person

incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or

adjudicated delinquent for, violations of criminal law or the terms and conditions of parole,

probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  "Therefore, the

PLRA clearly and unambiguously limits the application of the exhaustion requirements to

plaintiffs who are confined, incarcerated or detained in prison for criminal violations at the time

suit is filed."  *Mabry v. Freeman*, 489 F. Supp.2d 782, 785 (E.D. Mich. 2007) ("As Plaintiff in

this case was not a prisoner within the meaning of the PLRA when he filed his complaint, the

exhaustion requirement does not apply to his case.").  As the *Mabry* court points out, while the

Sixth Circuit has not specifically decided this issue, every federal court of appeals that has

addressed it has held that the PLRA's exhaustion requirement does not apply to suits filed by

former inmates.  *See id.* (gathering cases from the Second, Third, Fourth, Fifth, Seventh, Eighth,

Ninth, Tenth, and Eleventh Circuits).

Consequently, the Court **DENIES** Defendants' Motion for Summary Judgment based on the PLRA's administrative exhaustion requirement; however, as indicated below, Defendants are granted summary judgment on other bases.

**C.  Claims Against Franklin County and the Franklin County Board of Commissioners**

Defendants contend that they are entitled to judgment as a matter of law on Plaintiff's claims against both Franklin County and the Franklin County Board of Commissioners. Defendants argue that Franklin County lacks the capacity to be sued and that the Board of Commissioners is a creature of statute, with only those powers and duties conferred upon it by statute, none of which include control over the daily operations of the Jackson Pike Jail.  Plaintiff does not address these arguments in Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment.  The Court finds Defendants' arguments well taken.

Franklin County is not *sui juris* and lacks the capacity to sue or be sued except where specially authorized by statute.  *See McGuire v. Ameritech Serv., Inc.*, 253 F. Supp.2d 988, 1015 (S.D. Ohio 2003); *Pancake v. Wakefield*, 102 Ohio App. 5, 7 (Athens Cty. 1956) ("The rule is well recognized that the state and its political subdivisions may not be sued, except as specially authorized by statute.")  Here, Ohio Revised Code Section 301.22 governs the capacity of a county to sue or be sued.  That section provides that only a county that adopts a "charter or an alternative form of government" may be considered "a body politic and corporate for the purpose of enjoying and exercising the rights and privileges conveyed under it by the constitution and the laws of this state" and is "capable of suing and being sued, pleading and being impleaded." Franklin County has not adopted a charter or an alternative form of government and is not a body corporate and politic amenable to suit as provided by Section 301.22.

15

With regard to Plaintiff's ability to file suit against the Franklin County Board of Commissioners, this Court has already spoken on this exact topic in *Brown v. Voorhies*, No. 2:07-cv-0013, 2008 U.S. Dist. LEXIS 45778 (S.D. Ohio June 10, 2008):

> Lastly, Mr. Brown's attempt to impose liability on the Franklin County Commissioners for alleged injuries he suffered while confined at [the Franklin County Jail] likewise fails to state a claim upon which relief may be granted. Under Ohio law, the sheriff is in charge of the county jail and all persons confined therein.  Ohio Rev. Code Ann. § 341.01 (Baldwin 2008).  The sheriff "shall keep such persons safely, attend to the jail, and govern and regulate the jail according to the minimum standards for jails in Ohio promulgated by the department of rehabilitation and correction." *Id.*  The county commissioners have no duty to control the sheriff in keeping a jail safe, and the fact that Ohio Rev. Code § 307.01(A) designates the board of county commissioners as the agency to determine the necessity of jail construction does not mean that such board has any control over the operation of a county jail.  *Saunders v. McFaul*, 71 Ohio App.3d 46, 593 N.E.2d 24, 28, 8 Anderson's Ohio App. Cas. 378 (Ohio Ct. App. 8 Dist. 1990).

*Brown*, 2008 U.S. Dist. LEXIS 45778, at *4-5, *report and recommendation adopted and affirmed by*, 2008 U.S. Dist. LEXIS 64467 (S.D. Ohio August 21, 2008).  Therefore, Plaintiff's claims against the Franklin County Board of Commissioners must be dismissed.

Plaintiff's allegations that the Franklin County Commissioners employed the individual defendant deputies who allegedly violated Plaintiff's constitutional does not save his claims against the Commissioners.  Again, the *Brown* court spoke to this issue, stating "nor may Mr. Brown rely upon a theory of *respondeat superior* to impose liability on the Franklin County Commissioners." *Id.* at 6; *see also Knott v. Sullivan*, 418 F.3d 561, 574 (6th Cir. 2005) (court of appeals upheld this Court's entry of summary judgment for defendant county commissioners where commissioners did not participate in the allegedly unconstitutional searches and seizures of the plaintiff's vehicle and residence by sheriff deputies); *Ridgeway v. Union County Comm'rs*, 775 F. Supp. 1105, 1109-10 (S.D. Ohio 1991) (fact that county commissioners are responsible

16

for funding of sheriff's department and for administration of county government does not establish liability under *respondeat superior* and where recovery is based solely on such a theory, plaintiff fails to state a claim). As this case law explains, there is no viable claims against county commissioners for vicarious liability under Section 1983 for the allegedly unconstitutional actions undertaken by deputy sheriffs.

Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment as it relates to the Plaintiff's claims for relief against Franklin County and the Franklin County Board of Commissioners.

**D. Claims Against Sheriff Karnes**

Plaintiff alleges that Sheriff Karnes is liable for the unconstitutional conditions of confinement to which Plaintiff was allegedly subjected, that Karnes failed to implement the jail policies, which resulted in the unconstitutional conditions, and that Karnes failed to adequately supervise and/or train the individual deputies ("Deputy Defendants"). Sheriff Karnes argues that he is entitled to summary judgment on all of the claims filed against him because there is no evidence that he was personally involved in the alleged violations or that he failed to train or supervise the Deputy Defendants and there is no evidence, nor even any allegation, of any particular policy or custom of the Sheriff's office that allegedly caused the deprivation of Plaintiff's rights. This Court agrees.

In a Section 1983 action, liability cannot be based on a theory of *respondeat superior*. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.). "Nor can the liability of supervisors be based solely on the right to control employees, *Bellamy*, 729 F.2d

17

at 421, or 'simple awareness of employees' misconduct,' *Leary*, 349 F.3d at 903; *Bellamy*, 729

F.2d at 421." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006).

"Furthermore, 'a supervisory official's failure to supervise, control or train the offending

individual is not actionable unless the supervisor either encouraged the specific incident of

misconduct or in some other way directly participated in it.' " *Id.* (citing *Shehee v. Luttrell*, 199

F.3d 295, 300 (6th Cir. 1999) and *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982))

(internal quotation omitted). "At a minimum a plaintiff must show that the [supervisor] at least

implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the

offending officers." *Id.* (citing *Shehee*, 199 F.3d at 300 and *Hays*, 668 F.2d at 874). "These

principles make clear that a prerequisite of supervisory liability under § 1983 is unconstitutional

conduct by a subordinate of the supervisor." *Id.*

      In the instant action, as discussed *infra*, there is no unconstitutional conduct by any of the

Deputy Defendants. Moreover, even if there were such conduct, Plaintiff has made no showing

that Sheriff Karnes actively participated in or authorized any of the conduct. *See Bellamy*, 729

F.2d at 421 ("Bellamy has made no showing that any of the supervisory officials who were

defendants in this case actively participated in or authorized any harassment of appellant. The

testimony presented by Bellamy, at best, indicates that some instances of alleged harassment

were brought to the attention of prison supervisory officials.").

      With regard to Plaintiff's allegation that Defendants had a common practice or policy that

caused the alleged unconstitutional actions, the only argument made by Plaintiff is made on page

12 of Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment:

"Franklin County had a common practice of not providing cleaning supplies, not providing

grievance forms, not providing medical attention to inmates, destroying call cards, and providing unsanitary living conditions."  (Doc. # 67 at 12.)  Even assuming, as Defendants do, that Plaintiff asserts this claim against Sheriff Karnes, Plaintiff has utterly failed to provide any evidence on this claim, asserting this statement without citation to anything at all.  In the face of Defendants' properly supported motion for summary judgment, Plaintiff "may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56]--set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2) ("Opposing Party's Obligation to Respond.").  Plaintiff has failed to meet this burden.

Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment as it relates to the claims against Sheriff Karnes.

**E.  Claims Against the Individual Deputies**

Plaintiff brings claims against the Deputy Defendants in their individual and official capacities under Section 1983.  The Deputy Defendants, in their individual capacities, move for summary judgment based on qualified immunity.  "The affirmative defense of qualified, or good faith, immunity shields 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known.' "  *Gardenhire v. Schubert*, 205 F.3d 303, 310-11 (6th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Where a defendant moves for summary judgment based on qualified immunity, the defendant official must first demonstrate that he acted within his discretionary authority.  *Id.* at 311.  Once the official makes this showing, the burden shifts to the plaintiff to establish that the

19

defendant official's conduct violated a right so clearly established that any official in his position would have understood that he was under an affirmative duty to refrain from such conduct.  *Id.* (citing *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992)).  In the present case, Plaintiff does not dispute that Defendants were acting within their authority as correctional facility officers, so the burden shifts to Plaintiff to overcome the qualified immunity defense.

This Court, until recently, evaluated this burden according to the two-step sequential inquiry set forth in *Saucier v. Katz*, 533 U.S. 194 (2001) and determined (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct. Both elements must be met for a plaintiff to overcome a qualified immunity defense.  In *Pearson v. Callahan*, 129 S. Ct. 808 (2009), however, the United States Supreme Court held that the sequential *Saucier* protocol was no longer mandatory.  District courts may resolve the first or the second prong, in whatever order is most helpful, and need not address the remaining prong if unnecessary.  Thus, in the instant qualified immunity analysis, the Court does not resolve the second *Saucier* prong.  *See Waeschle v. Dragovic*, 576 F.3d 539, 543-44 (6th Cir. 2009) (not resolving the first *Saucier* prong).  Doing so is unnecessary because, as will be shown, even when viewing all of the evidence in the light most favorable to Plaintiff and making all reasonable inferences in his favor, Plaintiff fails to make out the first prong of the analysis, *i.e.*, a violation of a constitutional right.

**1. Plaintiff's claims regarding his conditions of confinement.**

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.

20

Although the Eighth Amendment does not apply to pretrial detainees, these detainees have a right under the Fourteenth Amendment's Due Process Clause analogous to a prisoners Eighth Amendment right to be free from cruel and unusual punishment.  *See Bell v. Wolfish*, 441 U.S. 520, 535 & n. 16, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979); *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985).  Thus, suits filed by pretrial detainees challenging conditions of confinement are analyzed under the same framework as claims filed under the Eighth Amendment.  *See Thompson v. County of Medina*, 29 F.3d 238, 242 (6th Cir. 1994).

"A detainee may claim a Fourteenth Amendment violation based on a state actor's 'failure to prevent harm' in the conditions of confinement--that is, the failure to take reasonable measures for the safety of the detainee."  *Schack v. City of Taylor*, 177 Fed. Appx. 469, 471 (6th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-34 (1994)).  A claim for failure to prevent harm will succeed where prison officials act with "deliberate indifference" towards conditions at the prison that created a substantial risk of serious harm.  *Farmer*, 511 U.S. at 834; *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997) ("To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, appellant must prove that appellees acted with "deliberate indifference" to a substantial risk of serious harm.").  This test involves both an objective and subjective component.  "First, the deprivation alleged must be, objectively, 'sufficiently serious,'; a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities,' "  *Farmer,* 511 U.S. at 834 (internal citations omitted).  "For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."  *Id.* (citation omitted).  To satisfy the subjective component, "an inmate must show that prison

21

officials had "a sufficiently culpable state of mind."  *Id.*  Although the deliberate indifference standard "describes a state of mind more blameworthy than negligence," this standard is satisfied if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 835, 837.

      In Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, Plaintiff claims that the Deputy Defendants subjected him to a substantial risk of serious harm in deliberate indifference to his health and safety because, while at the Jackson Pike Jail, "he did not have regular access to cleaning supplies, soap, whole towels, clean clothing, or toilet paper."  (Doc. # 67 at 2.)  Plaintiff contends that during October 2006, he and 29 other inmates were only given two rolls of toilet paper to share for a three day period, that toilets did not work for periods of twelve hours at a time and were full of waste during that time, and that two toilets were shared by over 25 inmates.  Further, Plaintiff asserts that he was "forced to hand wash laundry in the sink or shower" and that the "[c]old water in the sink did not work."  *Id.* "The rack for hanging towels only had space for 12 inmates [and] [t]owels were not allowed to be hung elsewhere."  *Id.*  Plaintiff complains that he was "given torn pieces of towel and torn bed sheets," that the cells were "infested with drain flies or gnats that swarmed around the drains and garbage bags," and that the "[i]nmate mattresses were never cleaned."  *Id.*  Also, Plaintiff claims that his grievances or "call cards" were mishandled or ignored.  *Id.* at 1.  Finally, Plaintiff claims that "[o]ver 25 inmates were in the same dorm as the plaintiff," that one of those inmates had open wounds on his genitalia, and that Plaintiff was punched in the face by one of the inmates. *Id.* at 2-4, 6.  Although he does not mention these in his opposition memorandum, in his

complaint Plaintiff also alleged that he was not provided warm clothing or sufficient exercise and recreation time.

Viewing all of the evidence before the Court in the light most favorable to Plaintiff and making all reasonable inferences in his favor, the Court concludes that Plaintiff has failed to show any constitutional violation based upon his conditions of confinement. Indeed, in Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, Plaintiff fails to respond to many arguments made in Defendants' Motion for Summary Judgment, and with regard to the few claims addressed, Plaintiff relies upon deposition testimony that is not properly before this Court because, as the Court explains above in Section II.B.4, the transcripts are uncertified and therefore, inadmissible.

Moreover, Plaintiff's claims, even if they were supported by admissible evidence, simply do not rise to the level of constitutional violations. In conditions of confinement challenges like this one, a claimant must establish an "excessive risk." *See Farmer*, 511 U.S. at 837. "Additionally, the prisoner must demonstrate that the risk is one which society deems so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005) (quotation and emphasis omitted). The conditions described by Plaintiff fall far short of meeting this burden. *See e.g., Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989) (constitutional violation found when "cell covered with filth and human waste, including the food slot" and "prisoner was denied access to proper cleaning supplies" to clean cell, "mattress was torn, dirty, stained with urine, and covered with human waste" and not replaced for ten months, prisoner was "denied laundry service during his first five months in the unit," and "[w]hen laundry service was finally commenced, [prisoner]'s

laundry was returned wet and still dirty," and prisoner provided "with only a dirty blanket and half a sheet)[1].

The Court concludes that Plaintiff has failed to meet his burden of showing that there are genuine issues of material fact regarding his claims based upon the conditions of his confinement at the Jackson Pike Jail.

### 2.  Plaintiff's claims regarding his medical needs.

As the Court indicated *supra*, pretrial detainees are not afforded the protection of the Eight Amendment; however, like in conditions of confinement cases, pretrial detainees are guaranteed the equivalent right to adequate medical treatment by the Due Process Clause of the Fourteenth Amendment, and are subject to the same "deliberate indifference" standard of care. *Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008) (citation omitted).  In the context of medical care for prisoners and detainees, it is well established that "deliberate indifference to a prisoner's [or detainee's] serious illness or injury" violates the constitutional right to be free from cruel and unusual punishment.  *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005).  This is the same deliberate indifference standard set forth above under the conditions of confinement section.  That standard is now applied to Plaintiff's claim of denial of medical care.

Plaintiff alleged in his complaint that he contracted scabies, MRSA, and a fungal infection while incarcerated at the Jackson Pike Jail.  Plaintiff further alleged that he complained,

---

[1]Plaintiff cites the Court to this case for the proposition that conditions of a filthy cell may not be constitutionally insufficient for a few days, but may be so when prisoner is subjected to it for weeks or months.  However, the conditions suffered by the plaintiff in *Howard* are clearly distinguishable from those to which Plaintiff was allegedly subjected.

for at least four days in a row, of an open wound on his genitals, and then a few weeks later of a

rash on his hand, toe, and eye, but that Defendants ignored his medical needs and denied him

prescription medication cream.  Also, Plaintiff contends that Defendants failed to provide him a

preliminary health screening.  Finally, Plaintiff claims that he was "mocked" and teased about

his genital rash by one of the Deputy Defendants.  (Complaint ¶ 4.)

The Court concludes that even when viewing all of the evidence in the light most

favorable to Plaintiff, he has not submitted sufficient evidence to rebut Defendants' properly

supported motion for summary judgment.  Indeed, Plaintiff has offered only his interrogatory

answers to support his claims, and they only offer Plaintiff's reiteration of his claims set forth in

the complaint on this issue.  There is no testimony from Plaintiff or the Deputy Defendants to

rebut Defendants' Motion for Summary Judgment because the deposition transcripts filed by

Plaintiff are uncertified and therefore, inadmissible, as this Court explained *supra* in Section

II.B.4.  Thus, Plaintiff has failed to raise any genuine issues related to the Deputy Defendants'

alleged deliberate indifference.

Further, as the Court also addressed above, Plaintiff failed to timely produce his medical

records to Defendants during discovery, and, even if he had produced them, he failed to properly

present them to this Court.  Consequently, there is no evidence of any medical need, let alone

evidence as to the "serious" nature of the alleged medical need.

Last, even if Plaintiff had provided evidence showing that Defendants failed to provide

him with a prescription cream medication and failed to provide a preliminary health screen, these

claims are merely claims of negligent failure to provide adequate medical care cloaked as

constitutional violations.  The Supreme Court is clear that negligence is not sufficient to state a

constitutional claim in the medical care context:

> Similarly, in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Estelle*, 429 U.S. at 105-06.

Consequently, Plaintiff has failed to meet his burden of showing that there is a genuine issue for trial on his claim of deliberate indifference to his medical needs.

### 3. Constitutional excessive force.

Plaintiff alleges that he was subjected to excessive force in violation of the Eighth Amendment when one of the Deputy Defendants intentionally squeezed Plaintiff's testicles while searching him. Both parties argue under the Eighth Amendment; however, as a pretrial detainee, Plaintiff's rights stem from the Due Process Clause of the Fourteenth Amendment, which "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). The law is unsettled as to whether the analysis of a Fourteenth Amendment excessive force claim and an Eighth Amendment excessive force claim is the same. *See Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008) ("[T]here is room for debate over whether the Due Process Clause grants pretrial detainees more protections than the Eighth Amendment does . . . ."). This Court, however, need not resolve the debate here. "Under either constitutional guarantee, an excessive-force claimant must show something more than *de minimis* force." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 9-10

(1992) (Eighth Amendment), *Bell v. Wolfish*, 441 U.S. 520, 539 n.21 (1979) (Due Process Clause), and *United States v. Budd*, 496 F.3d 517, 530-31 (6th Cir. 2007)).

Here, Plaintiff's allegation of a deputy squeezing his testicles during a search, for which he sought no medical attention, is *de minimis*.  *See id.* ("The undisputed facts in this case show that [the plaintiff]'s single allegation of force--that [a deputy] hit him '[i]n the back of the neck' with the side of his hand, performing 'a karate chop kind of deal'--was *de minimis*.  [The plaintiff], to start with, did not suffer any objectively verifiable injury from the blow.  There was no hospital visit after the encounter, no doctor's visit, no bruise, nothing in short to indicate that the encounter rose above a "negligible [use of] force" or caused anything more than a "trifling injury.") (citing *Riley v. Dorton*, 115 F.3d 1159, 1167 (4th Cir. 1997) (*en banc*)).  Like the plaintiff in *Leary*, Plaintiff here alleges a single incident of force, for which Plaintiff did not suffer any objectively verifiable injury, did not visit the hospital or request to do so, "no doctor's visit, no bruise, nothing in short to indicate that the encounter rose above a 'negligible [use of] force' or caused anything more than a 'trifling injury.' "  *Id.*  Accordingly, Plaintiff has failed to meet his burden of showing that there is a genuine issues of material fact regarding his excessive force claim.

### 4. First Amendment retaliation.

In the prison setting, to set forth a *prima facie* case of First Amendment retaliation, the plaintiff must show that "(1) [he] engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."  *Thaddeus-X*

*v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Here, Plaintiff alleges that he wrote a letter to County Commissioner Dewey Stokes complaining of his treatment at the Jackson Pike Jail and that based upon this letter, he was retaliated against by Defendants.  Specifically, Plaintiff alleges that after he wrote the letter his testicles were squeezed during a search, he was moved to a different cell at which time a book, two pair of underwear, three pair of socks, and several call cards went missing, and that one of the Deputy Defendants "acted in a very aggressive manner," toward Plaintiff.  (Doc. # 67 at 9-10.)  Plaintiff offers no admissible evidence in support of his claims.  *See id.* (relying on the uncertified depositions filed by Plaintiff in this action).  In contrast, Defendants identified those portions of the record that demonstrate "the absence of a genuine issue of material fact" and supported their position with admissible evidence.  *Catrett*, 477 U.S. at 323.  The burden was shifted to Plaintiff to set forth specific facts showing that there is a genuine issue for trial, which Plaintiff has failed to do.

**5.  Conclusion regarding claims against the Deputy Defendants.**

Based on the foregoing, the Court concludes that the Deputy Defendants are entitled to qualified immunity on all of Plaintiff's claims against them because, even when viewing all of the evidence in the light most favorable to Plaintiff and making all reasonable inferences in his favor, Plaintiff has failed set forth specific facts showing that there is a genuine issue as to whether he was subjected to any unconstitutional conduct by the Deputy Defendants.  Moreover, since there was no constitutional violation, Plaintiff's official capacity claims also fail.  *See Jarriett v. Wilson*, 414 F.3d 634 (6th Cir. 2005) ("As the district court pointed out, since there was no constitutional violation, Jarriett's official-capacity claims also fail."); *Scott v. Clay*

28

*County*, 205 F.3d 867, 879 (6th Cir. 2000) (concluding that if none of the officer defendants deprived the plaintiff of any constitutional right, the official capacity claim against the public entity represented by those officer defendants also must fail).

Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment as it relates to all Plaintiff's federal claims against the Deputy Defendants.

**F.  State law claims**

Plaintiff alleges claims for intentional infliction of emotional distress and assault and battery        under Ohio law.  However, because Plaintiff's federal claims do not survive summary judgment, the Court declines to exercise jurisdiction over Plaintiff's pendant state law claims.

## IV.  Conclusion

Based on the foregoing, the Court **DENIES** Plaintiff's Motion to File a Surreply (Doc. # 70) and **GRANTS** Defendants' Motion for Summary Judgment (Doc. # 28) as to Plaintiff's federal claims, and declines to exercise jurisdiction over Plaintiff's state law claims, which the Court **DISMISSES** without prejudice.  The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED.**

<u>**/s/ Gregory L. Frost**</u>
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**